*499 OPINION OF THE COURT
Scott Fairgrieve, J.
Respondent’s motion to dismiss the petition to terminate the admission agreement is granted.
Background History
On or about September 7, 2005, respondent resident, Alice Schillan, was admitted into a residential assisted living facility for senior citizens named “The Senior Care at Westbury.” Shortly after the inception of the respondent resident’s residency at the said facility, the petitioner, Arcadia Management, Inc., became the operator of the senior care center and continued the foregoing operations as an incorporation known as “The Arbors.” On January 20, 2006, respondent resident and her designated representative, Richard Schillan, entered into a written residency agreement with the petitioner. Petitioner, among other things, was responsible for providing all the work, service, and labor in connection to the respondent’s residency. Petitioner contends that the respondent resident agreed to remit payment to petitioner at the then applicable basic rate which was $2,925 per month at the time of signing. Petitioner further claims that pursuant to the contractual agreement, supplemental or additional fees for services and care can be charged under certain circumstances. According to the petitioner, these special circumstances arose; thus, the basic rate rose due to the increased care needs of the respondent resident. Respondent resident, and her designated representative, agreed to pay for additional care and service at the rate of $1,000 per month. This rate further increased in November of 2007 when an evaluation conducted by “The Arbors” revealed that the respondent resident again needed additional services. The petitioner states that in order to be appropriately maintained in the assisted living facility, a care package of an additional $700 a month was put in place. In sum, the total cost of living for the respondent resident is $4,085 per month.
The petitioner contends that although the respondent resident has made some payments to satisfy the account, there is an outstanding balance of $70,869.69 that remains unpaid and continues to increase at the prevailing daily rate. Thus, the petitioner asserts that due to the respondent resident’s failure to make timely payments for all charges and expenses, the petitioner’s request to terminate the admission agreement and involuntarily discharge the respondent resident from the facility is warranted and should be granted by this court.
*500 The respondent resident opposes this request by moving for an order dismissing the petition pursuant to CPLR 3211 and Social Services Law § 461-g (2) (a) (i). Specifically, the respondent contends that the 30-day termination notice mailed by the petitioner’s attorney is defective because it was not issued by the operator of “The Arbors,” but issued by the petitioner’s counsel. Respondent relies on the well-settled rule (hereinafter KFC rule) extrapolated from Siegel v Kentucky Fried Chicken of Long Is. (108 AD2d 218 [2d Dept 1985], affd 67 NY2d 792 [1986]) and requests a dismissal based upon that decision. Petitioner, however, contests the applicability of the rule to the instant case on grounds that the Kentucky Fried Chicken case involved a landlord-tenant relationship, whereas, in this case, a licensor-licensee relationship exists. Therefore, the petitioner contends that the rule in Kentucky Fried Chicken cannot be binding on this court due to this distinction.
Analysis
The court concludes that the rule as illustrated in the Kentucky Fried Chicken case is (1) applicable to the case presented, and (2) the 30-day notice of termination issued by the petitioner’s attorney is defective.
The KFC rule is a well-settled principle that was affirmed by the Court of Appeals in Kentucky Fried Chicken (supra), which reads as follows:
“[A] notice of termination [of tenancy] signed by an agent or attorney who is not named in the lease as authorized to act for the landlord in such matters, and which is not authenticated or accompanied by proof of the [latter’s] authority to bind the landlord in the giving of such notice, is legally insufficient to terminate the tenancy.” (108 AD2d at 223.)
The rule is further explained in 2 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 23:48 (at 210-211 [4th ed]), which states:
“A notice of termination must be signed or similarly authenticated by, or at least purport to emanate from, the party who has undertaken in the lease to give the notice . . . [I]t is well settled that where a lease provides for notice to be given by the landlord, a notice of termination signed by an agent, or by an attorney, who is not named in the lease, and which notice is not accompanied by proof of authority of the agent or the attorney to bind the landlord in *501 giving the notice, may be disregarded by the tenant. Such a notice is insufficient.”
In regard to applicability, the KFC rule does, in fact, apply to the case at bar, contrary to the petitioner’s assertions. In the case presented, the petitioner is an operator of an assisted living facility in which the respondent resides. There is no dispute that the respondent is deemed to be a licensee of the aforementioned premises. However, a licensor-licensee relationship is analogous to the landlord-tenant relationship that existed in Kentucky Fried Chicken. Moreover, there is no suggestion in the Kentucky Fried Chicken decision that the rule contained therein is limited in scope and cannot apply to relationships other than landlord-tenant relations. For example, the rule was applied to a mortgagor-mortgagee relationship in Manufacturers & Traders Trust Co. v Korngold (162 Misc 2d 669 [Sup Ct, Rockland County 1994]). In that case, the KFC rule guided the Supreme Court in ultimately holding that the notice of default sent by the mortgagee’s alleged agent failed to comply with the mortgage requirement that the “lender” send notice of default. (Id.)
Similarly, in Fanny Mae v Lindo (177 Misc 2d 1003 [Nassau Dist Ct 1998]), the issue raised pertained to a 10-day notice to quit served upon respondent by the petitioner’s counsel. In that case, a mortgage was foreclosed, and no landlord-tenant relationship existed. (Id. at 1004.) The court accordingly concluded that the 10-day notice to quit was defective because the law firm representing the petitioner signed the notice and had not previously dealt with, and was not known to the occupant of the premises. See also GMAC Mtge. Corp. v Toureau (15 Misc 3d 1139[A], 2007 NY Slip Op 51056[U] [Nassau Dist Ct 2007]) holding that the notice to quit executed by the petitioner’s attorney was insufficient because there was no evidence that the attorney attached an authorization, nor was there evidence that there were prior dealings between petitioner’s hired counsel and respondent.
These cases illustrate that the KFC rule has been applied to cases even in the absence of a landlord-tenant relationship. Therefore, the residency agreement and notice of termination pertaining to the instant case should be interpreted in accordance with the Kentucky Fried Chicken holding.
In the instant case, nowhere in the residency agreement does it state that the petitioner’s attorney is authorized to act on behalf of the company by serving a notice of termination upon *502 the respondent. On the contrary, the residency agreement clearly provided that the termination notice must be served by a specifically designated person: the operator. Section XIII of the residency agreement states, “This Residency Agreement and residency in the Residence may be terminated . . . [u]pon 30 days written notice from the Operator to you, your representative, your next of kin, the person designated in this agreement and any person designated by you.” (Petitioner’s notice of petition to terminate admission agreement, exhibit A [emphasis added].)
The residency agreement acknowledges that the petitioner, Arcadia Management, Inc., is the sole operator of the said premises. Furthermore, only the petitioner is referred to as “the Operator” throughout the text of the residency agreement and other subsequent documentations. The petitioner’s attorney is not declared as the operator, nor is there any indication in the residency agreement that the petitioner’s attorney has authority to act on behalf of the petitioner in the matter against the respondent resident.
Conclusion
In view of the foregoing, the respondent’s motion to dismiss this proceeding is granted. All other claims raised are without merit and need not be addressed.